IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TROY M.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   CIVIL ACTION |
| v. | ) |
| | )   No. 24-1239-JWL |
| FRANK BISIGNANO,[2] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's mental impairments, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on November 23, 2022. (R. 14, 237-39). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed adequately to evaluate the impact of Plaintiff's mental impairments on his residual functional capacity (RFC). (Pl. Br. 7-14).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the quantity, of the evidence. It requires more than a scintilla, but less than a preponderance; it is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process (SEP).  Id.

3

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

**II.     Discussion**

Plaintiff acknowledges the ALJ found Plaintiff's mental impairments medically determinable and not severe at step two of the SEP.  (Pl. Br. 7).  He argues she erred, however, by failing to "consider the impact of [Plaintiff's] mental impairments at step four" and "failed to explain why she omitted any limitations accounting for them in the RFC."  Id.  Plaintiff argues the ALJ erred in finding Plaintiff's mental impairments not severe based upon Plaintiff's testimony; the treatment records of Licensed Professional Counselor (LPC), Ms. Sweet; the findings of a neuropsychological consultation by Dr. Fuendeling, PhD; and the medical opinion of Ms. Sweet, LPC.  Id., 8-10.

Plaintiff argues that even if the ALJ properly found his mental impairments not severe at step two of the SEP,

4

> the ALJ's error is at step four when assessing the RFC. Wells v. Colvin, 727 F.3d 1061, 1064 (10th Cir. 2013). Indeed, the ALJ's finding that [Plaintiff's] mental impairments were not severe at step two is not a substitution for a proper RFC analysis. See Mary E. K. v. Kijakazi, No. 21-CV-2373-TC, 2023 WL 4105155, at *3 (D. Kan. June 21, 2023) ("Consideration of physical and mental impairments during the RFC analysis is distinct from the determination of an impairment's severity at step two.") (citing Wells, 727 F.3d at 1068-1069)). And while a nonsevere impairment "standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5. The ALJ failed to provide reasons supported by substantial evidence for failing to consider [Plaintiff's] mental impairments at step four.

(Pl. Br. 10).

Plaintiff argues the ALJ erred in failing to explain how his mental functional limitations were considered in assessing his Mental RFC. Id. He argues the ALJ's consideration of Plaintiff's allegations of symptoms discussed only inconsistencies regarding physical symptoms and his consideration of daily activities discussed only how they related to physical functional limitations and "was insufficient to offer rationale for omitting any mental limitations from the RFC." Id., 11-12. He recognized the ALJ discounted Ms. Street's medical opinion based on Ms. Street's normal mental status examinations and on the recommendations of Dr. Fuendeling's neuropsychological consultation but argues error because she also found Ms. Sweet's opinion "largely based" on Plaintiff's self-reports without providing an evidentiary basis for that finding. Id. 12.

Plaintiff argues the ALJ relied on a selective reading of the report of Dr. Fuendeling's consultation, relying on less serious findings while ignoring recommendations suggesting significant mental symptoms. (Pl. Br. 12-13). Finally,

5

Plaintiff argues that having rejected Plaintiff's reports, Ms. Street's opinion, and Dr. Fuendeling's report, "that left the ALJ without sufficient evidence to evaluate the impact of [Plaintiff's] mental impairments on his ability to function" and the ALJ had a duty to fully and fairly develop the record. Id. 14.

The Commissioner argues there was no error in finding Plaintiff's mental impairments not severe at step two of the evaluation process and even if there were the error would be harmless because the ALJ considered all Plaintiff's impairments in assessing RFC and in steps four and five of the evaluation process. (Comm'r Br. 5). He argues that in her RFC assessment the "ALJ specifically discussed Plaintiff's reported mental symptoms, his function report, a statement from his wife, his mental health treatment, a neuropsychological evaluation, and a medical opinion as to his mental capacity." Id. He argues "Plaintiff has not identified any evidence in the record regarding his mental impairments that the ALJ failed to consider." Id. He argues the ALJ's consideration in assessing RFC and at steps four and five renders any step two error harmless. Id. at 6.

He also argues that the ALJ's consideration of mental impairments in assessing RFC was adequate for three reasons. First, he argues mild mental limitations assessed in the four broad mental functional areas do not require functional mental RFC limitations. Id. (citing Vigil v. Colvin, 805 F.3d 1199, 1203 (10th Cir. 2015) ("a moderate limitation … does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment.")). He points out that a mild limitation in one of the four broad mental functional areas means functioning in that area is only "slightly limited;" 20

6

C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b); and a finding of "none" or "mild" limitations in all four broad mental functional areas results in finding the claimant's mental impairments are not severe. (Comm'r Br. 7) (citing 20 C.F.R. § 404.1520a(d)(1)).

Second, the Commissioner argues the regulations only require that all the claimant's medically determinable impairments be considered in assessing RFC, not that they be specifically discussed in assessing RFC. Id. 9-10 (citing 20 C.F.R. § 404.1545(a)(2)). Finally, the Commissioner argues the ALJ discussed Plaintiff's mental impairments thereby "making it clear such impairments were properly considered when assessing Plaintiff's RFC." Id. 13 (no.3, bold omitted). He argues Plaintiff's claim the ALJ failed to consider the impact of Plaintiff's mental impairments "is demonstrably false as the ALJ specifically discussed Plaintiff's mental impairments and related symptoms when formulating the RFC." Id. 14. He cites the record evidence regarding Plaintiff's mental impairments which was considered and discussed in the ALJ's decision. Id. 14-16. The Commissioner concludes by arguing that Plaintiff has not shown the record evidence compels an outcome contrary to the ALJ's determination and that much of Plaintiff's argument merely asks the court to reweigh the evidence. Id. 17.

In his Reply Brief, Plaintiff reiterates the arguments in his brief. He also argues an "ALJ is required to explain how the non-severe mental impairments are considered at step four." (Reply 2) (citing Beer v. Kijakazi, No. CIV-20-351-AMG, 2021 WL 3824837, at *3 (W.D. Okla. Aug. 26, 2021)). He argues,

> Though Defendant attempts to point to the ALJ's decision as showing a clear discussion of how [Plaintiff's] non-severe mental impairments were considered when evaluating the RFC, after rejecting Ms. Street's opinion

7

>and [Plaintiff's] reports, the ALJ did not cite evidence to explain how the
>non-severe mental impairments were considered in assessing the RFC.

Id., 4-5. He argues the ALJ did not justify failing to provide mental functional limitations and her "speculation that the jobs at step five were sufficient to address [Plaintiff's] mental impairments was impermissible post hoc rationale." Id. 5.

### A.     Alleged Step Two Error

Plaintiff does not seriously allege error in finding mental impairments not severe at step two of the SEP and the court finds no error. The regulations provide that at step two the SSA will rate the degree of limitation a claimant has in each of the four broad mental functional areas and if the degree of limitation found in each of the areas is "none" or "mild," the agency "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found:

>Because the claimant's medically determinable mental impairments caused
>no more than "mild" limitation in any of the functional areas and the
>evidence does not otherwise indicate that there is more than a minimal
>limitation in the claimant's ability to do basic work activities, they were
>non-severe.

(R. 19) (underline in original). The ALJ clearly applied the correct legal standard at step two and Plaintiff does not demonstrate that his limitation in any functional area was moderate or greater or that the evidence demonstrates more than a minimal limitation in his ability to perform basic mental work activities. Plaintiff's argument—that his testimony; the treatment records of Ms. Sweet; the findings of a neuropsychological

8

consultation by Dr. Fuendeling, PhD; and the medical opinion of Ms. Sweet demonstrate that his mental impairments are severe—does not cite to evidence which compels a finding of severity.  Therefore, it is essentially a request for the court to reweigh the evidence and impose a finding that Plaintiff's mental impairments are severe.  As noted above, the court may not do so.  Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434.

      B.      **Alleged Errors in Evaluating RFC Limitations**

Plaintiff's argument the Commissioner failed to consider Plaintiff's mental impairments at step four also fails.  The court notes that the ALJ's RFC assessment is made after the step-three determination whether the claimant's impairment(s) meets or medically equals the severity of a Listed Impairment and is used at step four to determine if the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work.  20 C.F.R. § 404.1520(a)(4)(iii-v), (e).

Plaintiff first alleges the ALJ's consideration of inconsistencies between the evidence and his allegations of symptoms discussed only inconsistencies regarding physical activities and daily activities only as related to physical functional limitations. (Pl. Br. 11-12).  However, Plaintiff ignores the inconsistencies found by the ALJ in her step two evaluation of Plaintiff's mental impairments, wherein she found:

> mental status [examination] demonstrates limited abnormalities during treatment presentations, and he is described as "cooperative" and/or "fully engaged" at various times.  Abnormalities demonstrated during a November 2022 neuropsychological evaluation were also limited, although euthymic mood and evidence of stress with effort was demonstrated; however, the provider recommended lifestyle modifications to include pain relief using something other than cannabis products, as well as counseling

9

> and insomnia treatment. The claimant testified to limited/no psychotropic medication use because of undesirable side effects.

(R. 18) (citations omitted).

Discussing the functional area of understanding, remembering, or applying information, the ALJ noted several inconsistencies with Plaintiff's allegations of disabling mental limitations, explaining Plaintiff's

> completion of four or more years of college in June 2020, with no history of special education participation. He lives independently with his family, and participates in outpatient therapeutic counseling for his symptoms. A November 2022 neuropsychological evaluation yielded findings regarding intellectual functioning in the average range, although mild neurocognitive disorder and insomnia were diagnosed to account for "mild, intermittent weakness in attention and some aspects of mental control and organization that fall within executive functioning." Mental status indicates he is alert, oriented, and/or engaged during various encounters.

Id., 18-19 (quoting R. 1738, citations omitted). The ALJ's discussion of each of the other three mental functional areas includes identical or similar statements including the abilities to drive, to go outside/leave home alone for up to two hours at a time; shop in stores; and to keep in touch with others in person, on the phone, and via texting. Id. 19.

The fact the discussion of these inconsistencies between Plaintiff's allegations of disabling mental impairments and the record evidence occurred in the section of the ALJ's decision discussing step two of the SEP is of no import. This case is a judicial review of the Commissioner's decision to deny Social Security benefits to Plaintiff and the ALJ stated she discounted Plaintiff's allegations of symptoms because they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23) (underline added). Inconsistencies explained

in the step two section of the decision are inconsistencies as much as inconsistencies explained in the RFC assessment between the step three and step four sections or in any other section of the decision.

Plaintiff acknowledges the ALJ presented inconsistencies between the record evidence and Plaintiff's allegations of physical impairments upon which she relied to discount Plaintiff's allegations of disabling symptoms but argues the ALJ must address inconsistencies regarding each impairment—or at least each class of impairments—to discount Plaintiff's allegations of symptoms relevant to mental impairments.  This court has held previously that the Commissioner must explain his reasons for discounting a claimant's allegations of symptoms but need not provide a basis to discount every alleged symptom.  Betsy Mae L. v. Bisignano, Civ. A. No. 24-2467-JWL, 2025 WL 2561293, *5 (D. Kan. August 26, 2025) ((citing this court's decision in Attia D. S. v. O'Malley, Civ. A. No. 23-1262-JWL, 2024 WL 4381228, at *6 (D. Kan. Oct. 2, 2024).   Moreover, as discussed above the ALJ here also expressed inconsistencies with Plaintiff's mental impairments upon which she relied to discount his alleged symptoms, and Plaintiff does not point to evidence compelling a finding of consistency.

Plaintiff argues the ALJ erred in discounting Ms. Sweet's opinion because it was "largely based upon claimant [sic] self-report of symptoms during counseling."   (R. 26). Plaintiff is correct that an ALJ must have an evidentiary basis to discount a medical opinion because it is based on a claimant's self-reports.  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), and Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005).  Here, however, the ALJ provided an evidentiary basis to find Ms. Sweet's

11

opinion largely based on Plaintiff's self-reported symptoms. She found Ms. Sweet's opinion "appears largely based upon claimant self-report of symptoms during counseling, rather than upon observed clinical abnormalities, where rarely the claimant is noted as 'frustrated' in addition to being engaged and cooperative." (R. 26) (citations omitted). Thus, the ALJ found, based upon (and citing to) Ms. Sweet's treatment notes, that the limitations opined appear to be based on Plaintiff's self-reports which are presented in the treatment notes rather than observed clinical abnormalities which do not appear in the treatment notes demonstrating "limited abnormalities during treatment presentations" and showing Plaintiff is engaged and cooperative but, rarely, frustrated. Id. Moreover, the ALJ found the opinion

> is not consistent with findings during a November 2022 neuropsychological evaluation where abnormalities included euthymic mood and evidence of stress with effort; however, other findings were largely within normal limits and the provider recommended lifestyle modifications to include pain relief using something other than cannabis products, as well as counseling and insomnia treatment to improve functioning.

Id. Plaintiff has shown no error in the ALJ's evaluation of Ms. Sweet's opinion.

Plaintiff argues the ALJ relied on a selective reading of Dr. Fruendeling's neuropsychological consultation, relying on the psychologist's recommendation of lifestyle modification, counseling, and insomnia treatment while ignoring "recommendation that suggested significant mental symptoms consistent with [Plaintiff's] reports." (Pl. Br. 12-13).

The court finds no error in the ALJ's reliance on Dr. Fruendeling's report. The doctor provided his recommendations in his neuropsychological consultation report:

12

Recommendations:

1) Given that [Plaintiff's] attention and memory complaints are currently at a level that can be explained in large part by his regular use of cannabis products, I encourage [Plaintiff] to refrain from regular use of cannabis and find other ways to manage pain instead.

2) Although I have not assigned a formal **diagnosis** of **depression** or **anxiety**, [Plaintiff] describes history of both and indicate[s] moderate to severe levels of current symptomatology. A referral to PCMHI for brief **assessment** and possible therapeutic intervention might be helpful to his overall functioning, including his cognitive functioning.

3) It seems likely that disrupted or dysregulated sleep is also contributing to [Plaintiff's] cognitive complaints. The effects of insomnia on attention are usually well understood. Notably, narcolepsy or hypersomnia can also impact attention and memory, likely because of the cognitive effort and resources that patients expend trying to maintain alertness.

4) Given the specificity of [Plaintiff's] deficits to language and the possibility of lateralization that this raises, new **imaging** may be helpful in understanding the etiology underlying his deficits

(R. 1004-05, 1754 (duplicate) (bold in original)).

The ALJ also cited Dr. Fruendeling's explanation of his recommendations as recorded in his discussion with Plaintiff and his wife:

Recommendations:

1) Given that [Plaintiff's] attention and memory complaints are currently at a level that can be explained in large part by his regular use of cannabis products, I encourage [Plaintiff] to refrain from regular use of cannabis and find other ways to manage pain instead. Notably, he has tried numerous approaches to pain management, but does not appear to have had CBT for pain. I discussed with him referral to our pain clinic, and he agreed to this.

2) Although I have not assigned a formal **diagnosis** of **depression** or **anxiety**, [Plaintiff] describes history of both and indicate[s] moderate to severe levels of current symptomatology. [Plaintiff and his wife] are currently seeing a counselor in the community. If this is not helpful, [I] suggested that they seek a referral to PCMHI through his **PCP**.

13

>3) It seems likely that disrupted or dysregulated sleep is also contributing to [Plaintiff's] cognitive complaints. The effects of insomnia on attention are usually well understood. Notably, narcolepsy or hypersomnia can also impact attention and memory, likely because of the cognitive effort and resources that patients expend trying to maintain alertness. I suggested to the [Plaintiff and his wife] that they discuss with their current counselor whether she is able to provide CBT-I. If she is not, I suggested that they seek CBT-I through the Joplin CBOC.
>
>4) Given the specificity of [Plaintiff's] deficits to language and the possibility of lateralization that this raises, new **imaging** may be helpful in understanding the etiology underlying his deficits.
>
>5) Now that [Plaintiff] is established with a neurologist in VA and will hopefully have a consistent relationship with her, I also suggest that they pursue a work up for possible seizure activity. While this may not be the most likely etiology for his issues, I think it is worth looking into.

(R. 1738-39) (bold in original). The ALJ considered and specifically cited each of these notes recorded by Dr. Fruendeling in his reasons for discounting the opinion of Ms. Sweet. (R. 26) (citing Ex. C15F/78-79, 91-94 (R. 1738-39, 1751-54)).

When considered in light of this evidence specifically relied upon by the ALJ, Plaintiff's suggestion that the psychologist's recommendation: (that a referral to PCMHI might be helpful) and his suggestions: (that Plaintiff's issues with organization and variable attention are particularly consistent with the impacts of insomnia or hypersomnia and of mood; that it seems likely that disrupted or dysregulated sleep is also contributing to Plaintiff's cognitive complaints; that new imaging may be helpful in understanding the etiology underlying Plaintiff's deficits; and that Plaintiff's memory difficulty is likely secondary to his attentional trouble, which could be fully explained by his use of marijuana or derivative products, anxiety and mood, or dysregulated sleep, while his language weakness is unlikely to result from those factors, and he may have left temporal

14

seizure activity or some related neurological issue that underlies his language difficulty, cataplexy, and migraines) might constitute "significant mental symptoms consistent with [Plaintiff's] reports" (Pl. Br. 13), is simply without merit.  The statements or recommendations cited by Plaintiff are merely Dr. Fruendeling's suggestions of further steps which might be explored if current treatment is not productive, statements of fact which did not significantly affect his diagnoses or recommendations, and speculation regarding potential neurological bases for some of Plaintiff's physical problems.  None of Plaintiff's citations reveals that Dr. Fruendeling believed Plaintiff's mental limitations were as severe as Ms. Sweet opined or that Dr. Fruendeling found disabling mental limitations.  In other words, Plaintiff has not cited evidence which compels a different finding but essentially asks the court to reweigh the evidence more favorably to his position and substitute the court's judgment for that of the Commissioner.  It cannot do so.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434.

  Plaintiff next argues that rejecting Plaintiff's report of symptoms, Ms. Sweet's opinion, and Dr. Fruendeling's report "left the ALJ without sufficient evidence to evaluate the impact of [Plaintiff's] mental impairments on his ability to function." (Pl. Br. 14).  Plaintiff's argument misses the burden of proof in a Social Security disability decision.  Plaintiff testified that his mental impairments are disabling and Ms. Sweet similarly opined that his mental impairments are disabling.  The Commissioner found that the evidence, including Dr. Fruendeling's report, demonstrates inconsistencies in Plaintiff's allegations of symptoms and discounts Ms. Sweet's opinion.  This is not a

finding of insufficient evidence but a finding that the evidence does not support Plaintiff's claim of disability. While it is the Commissioner's duty to fully and fairly develop the record, Plaintiff points to no evidence which was necessary to the decision at issue and was not secured or developed by the ALJ, and the court finds none. Plaintiff simply did not meet his burden of proof.

      As noted above, in his Reply Brief Plaintiff argued,

> the ALJ is required to explain how the non-severe mental impairments are considered at step four. See Beer v. Kijakazi, No. CIV-20-351-AMG, 2021 WL 3824837, at *3-4 (W.D. Okla. Aug. 26, 2021) ("The RFC contained no mental limitations, and the ALJ's justification for the RFC made only brief or oblique references to Plaintiff's mental state or mental functioning. … The ALJ did not attempt to tie any of this evidence to his decision not to include mental limitations in the RFC.").

(Pl. Reply 2-3).

      The court acknowledges that non-severe mental impairments must be considered in assessing RFC and in all further steps of the SEP but it does not agree that an ALJ is required to explain how she considered them at step four. In the Beer decision, the court noted the ALJ's "only further statement about Plaintiff's mental impairments was at the end of his Step 2 analysis—that "the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Beer, 2021 WL 3824837, at *3. The ALJ's decision here contains a statement at the end of her step two analysis identical in every respect to the statement quoted above by the Beer court. (R. 19). However, thereafter in her RFC assessment the ALJ makes references to Plaintiff's mental impairments which are extended or direct rather than brief or oblique as those found by the Beer court.

As noted herein above, the ALJ discussed Dr. Sweet's medical opinion regarding Plaintiff's mental limitations in her RFC assessment and found the opinion unpersuasive because it appeared to be based on Plaintiff's reported symptoms rather than observed clinical abnormalities, was inconsistent with evidence of limited abnormalities during treatment, and was inconsistent with Dr. Fruendeling's neuropsychological evaluation. (R. 26). Thereafter, the ALJ explained her discounting of Plaintiff's allegations of disabling symptoms, specifically noting:

> Mentally, they are not consistent with limited outpatient counseling for mental impairment; with limited medication use; with neuropsychological evaluation yielding findings regarding intellectual functioning in the average range, although mild neurocognitive disorder and insomnia were diagnosed to account for "mild, intermittent weakness in attention and some aspects of mental control and organization that fall within executive functioning;" or with various mental status findings indicating the claimant is alert, oriented, and/or engaged during various encounters.

Id. 27 (citations omitted).

The evidence clearly reveals the ALJ considered Plaintiff's mental impairments when assessing his RFC, and in doing so she determined he had no mental functional limitations preventing him from engaging in substantial gainful work activity even when considered in conjunction with his other impairments. She also noted in her step two finding "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Id. 19. She was not required to state some additional magic words. Plaintiff has the burden of proof in presenting his functional limitations. To demonstrate he has met that burden before a court, Plaintiff must suggest a mental limitation or limitations which should have been

assessed and point to record evidence which compels finding that limitation or those limitations.  In a case such as this, where the ALJ has applied the correct legal standards and has explained her consideration, any other course is merely asking the court to reweigh the evidence and substitute its judgment for that of the ALJ.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 25, 2026, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**